UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH LOUIS CAMMATTE | CIVIL ACTION |
| VERSUS | NO. 10-4039 |
| CORRECT HEALTH | SECTION "I" (2) |

**REPORT AND RECOMMENDATION**

Plaintiff, Joseph Louis Cammatte, is a prisoner currently incarcerated in the Jefferson Parish Correction Center ("JPCC") in Gretna, Louisiana, awaiting trial on a murder charge. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Correcthealth Jefferson, L.L.C., the provider of medical care at JPCC. He alleges that while incarcerated in the JPCC in 2010, he received constitutionally inadequate medical care for an infection. He seeks "compensation for negligence, pain & suffering and malpractice." Record Doc. No. 1 (Complaint at ¶ V).

On January 13, 2011, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Jason Thrower, counsel for defendant. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he is currently incarcerated in JPCC awaiting trial on a murder charge. He said he has been held in JPCC since November 20, 2008, and that his trial has not yet been scheduled.

Cammatte confirmed that his only claim in this case is that he did not receive adequate medical care for a condition that first arose in September 2010. He stated that he had received and reviewed a copy of the medical records that I previously ordered defendant to provide, Record Doc. Nos. 6 and 22, and that they are accurate.

He testified that on September 12, 2010, he submitted a sick call request to the nurse on duty at JPCC explaining that he needed treatment for "an unknown anomaly on my right buttock." Cammatte believed that the nurse's name was Avery Nash. He confirmed the notation in the medical records reflecting that it may have been Nurse Leila Nash who screened his request for medical attention on that date. Cammatte testified that the condition had arisen "a couple of days" before he made the request. "It was something I believe was an in-grown hair or possibly a pimple," he said, "and it just got larger and larger and larger." Plaintiff testified that it "came to a head and burst, and it bled freely." He said he has hepatitis and that he told the nurse every time she passed through the area during the next three days that "I needed a Band-Aid or I needed some way that I could see someone to stop the bleeding, a health risk to everyone in the [jail]

pod [where he was housed]." Cammatte testified that he was provided with no medical attention for this condition for three days.

He confirmed the notation in his medical records that he was seen by Dr. Caldwell at the jail on September 16, 2010, four days after he first submitted a written request for treatment. He stated that he was already scheduled to see the doctor that day in a chronic care unit, because he is seen by a doctor at the jail approximately once a month to monitor his hepatitis condition. Cammatte testified that Dr. Caldwell knew at that time that he also needed to be seen about the condition he had described in his medical request four days earlier. He stated that Dr. Caldwell "laid me on my stomach, squeezed out some brown, bloody pus, and put a bandage on it." Plaintiff stated that on the following day, September 17, 2010, he was returned to the JPCC medical unit to have his bandage changed, and "the nurse immediately sent me to receive emergency surgery." He clarified that he makes no claim in this case concerning the care he has received for his hepatitis condition, but only for "the staph infection on my rear end."

Cammatte testified that on September 17, 2010, he was transported from the JPCC to University Hospital in New Orleans, where he was given antibiotics, pain-killers and a surgical procedure employing local anesthesia to treat the infection. He said he was in the hospital for a matter of hours, and then he was returned to JPCC, where he was placed in the jail infirmary for 16 to 20 hours of post-surgical observation. He complained that

conditions in the JPCC infirmary, where he stayed temporarily after his return from the hospital, were "filthy, it's disgusting." He alleged that the infirmary has "lice" and "crabs down there, the cells, mattresses and blankets are not clean, and "it looks more like a battlefield hospital tent." He said that he was removed from the infirmary after about 16 to 20 hours and returned to his regular cell on September 18, 2010.

Cammatte confirmed the notation in his medical records that he was scheduled for a follow-up examination at the hospital on September 27, 2010, but he refused to go because he was concerned that after he was returned to jail from the hospital he would have to spend more time in the jail infirmary, which "I feel does more damage than good."

Plaintiff testified that "my treatment after the initial problem was very good." He described this good subsequent treatment as "changing of the dressing and just . . . daily observation of the wound by the treatment nurse here." He said his complaint is that he was "bleeding freely" with a "five by eight centimeter hole in my right buttock" for three days, that he explained the problem to numerous nurses and deputies, yet was not taken for medical attention for three days. "I just feel that bleeding on the pod with 19 other people and in a cell with another person is just unacceptable," he said, and although he told authorities about the problem, they provided no assistance for three days.

Cammatte testified that his wound healed completely in early October 2010, a matter of about three weeks from when the infection first occurred.

On cross-examination, plaintiff confirmed that his initial written request on September 12, 2010, for medical attention for this condition was somewhat vague in that it did not specifically describe his condition as an abscess. He confirmed that when Dr. Caldwell examined him on September 16, 2010, the doctor told plaintiff he had an abscess, bandaged it and prescribed two types of medication, with follow-up daily bandage changes. He also acknowledged that it was during the first bandage change on the following day when he was sent to the hospital, to have the abscess surgically drained. Cammatte clarified that he was never in the jail infirmary before his return from the hospital and that the jail medical unit and infirmary are two different and separate facilities. He alleged that it is only the infirmary that is below standard. He confirmed that his only evidence that the infirmary is not sufficiently cleaned is his own observations. He also confirmed that his infection did not result in any incapacitation or permanent loss or long-term handicap, "but I would like to say that as a health care provider, the nurse refused even to look at my wound . . . I don't believe that's proper health care. . . ."

Before the Spears hearing, defendant filed a motion to dismiss, that I converted to a motion for summary judgment. Record Doc. Nos. 19 and 20. In the motion,

supported principally by excerpts from plaintiff's medical records, defendant argues that the care plaintiff received concerning the subject condition was constitutionally adequate as a matter of law. Plaintiff filed a written response, Record Doc. No. 23, which I have considered in conjunction with his testimony. Defendant was granted leave to file a reply memorandum. Record Doc. Nos. 24 - 26.

## **ANALYSIS**

I.     STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[1]

## II. MEDICAL CARE

Cammatte was a pretrial detainee during the time period about which he complains. He asserts that he received inadequate medical care for an infection on his buttocks.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

9

government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test

11

is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th

Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Cammatte must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions he described, consisting of an infection caused by a pimple or an ingrown hair on his buttocks, presented serious medical needs that posed a substantial risk of harm during Cammatte's incarceration at the jail. As Cammatte conceded during his testimony, he did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Jackson v. Douglas, 270 Fed. Appx. 462, 2008 WL 748652, at *1 (8th Cir. 2008) (boils on plaintiff's arm and chest not an objectively serious medical need); Stepnay v. Goff, 164 Fed. Appx. 767, 2006 WL 182059, at *2 (10th Cir. 2006) (Inmate with staph infection "may not avoid dismissal . . . by merely asserting conclusory allegations that his condition obviously required a doctor's attention because most skin conditions are not intuitively serious."); Tasby v. Cain, 86 Fed. Appx. 745, 2004 WL 243433, at *1 (5th Cir. 2004) (Plaintiff's assertion that he developed a rash from being placed in restraints "does not establish that he suffered 'serious harm.'"); Gonzalez-Reyna v. Ellis, No. 1:09cv522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth

14

Amendment violation."). Cammatte also acknowledged that his "infection" cleared up within weeks.

Under the foregoing standard, Cammatte's complaint clearly does not rise to the level of a <u>serious</u> medical need for purposes of constitutional analysis. See <u>Lockett v. Suardini</u>, 526 F.3d 866, 877 (6th Cir. 2008) ("minor lacerations and cuts" and soreness in two fingers, which were no longer obvious upon medical examination within 24 hours after altercation, were not serious medical needs); <u>Vaughn v. City of Lebanon</u>, 18 Fed. Appx. 252, 2001 WL 966279, at *20 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); <u>Dawes v. Coughlin</u>, 159 F.3d 1346, 1998 WL 513944, at *1 (2d Cir. 1998) (small laceration not a serious medical need); <u>Davis v. Jones</u>, 936 F.2d 971, 972-73 (7th Cir. 1991) (one-inch laceration not serious medical need); <u>Benitez v. Locastro</u>, No. 9:04-CV-423, 2010 WL 419999, at *7 (N.D.N.Y. Jan. 29, 2010) (bruises and a laceration not serious medical conditions); <u>Willacy v. County of Brevard</u>, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need).

Even assuming, however, without concluding that plaintiff's condition presented serious medical need for constitutional purposes, Cammatte has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail. Cammatte testified that he was taken to the medical department at the jail within four days of his written request and that a doctor at the jail treated him and bandaged the wound. He was sent to the hospital from the jail on an emergency basis on the next day and thereafter received treatment and medication that successfully cured his problem within a few weeks.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no

constitutional violations when first plaintiff's injury was not severe enough to warrant medical attention and healed on its own in a few days, and when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Cammatte has alleged a four-day delay in receiving medical care in that he did not immediately receive the treatment he thought was necessary, and he has expressed dissatisfaction with the overall speed and quality of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

17

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the extensive and ultimately successful medical care Cammatte has received during his pre-trial incarceration.

Contentions like Cammatte's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999)

18

(plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1). Because I am recommending that the complaint be dismissed as legally frivolous and/or for failure to state a claim as a screening matter pursuant to 28 U.S.C. § 1915A, I also recommend that defendant's motion, which was converted to a motion for summary judgment, be DISMISSED AS MOOT.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___18th___ day of February, 2011.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.